**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOHNNY S.,

       Plaintiff,

  v.           8:23-CV-816
              (DJS)
MARTIN J. O'MALLEY,
_Commissioner of Social Security_

       Defendant.
_____

**APPEARANCES:**       **OF COUNSEL:**

SCHNEIDER & PALCSIK    MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

U.S. SOCIAL SECURITY ADMIN.   JASON P. PECK, ESQ.
OFFICE OF GEN. COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

## <u>MEMORANDUM-DECISION AND ORDER[1]</u>

    Plaintiff Johnny S. brought this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security that Plaintiff was not

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. _See_ Dkt. No. 5 & General Order 18.

disabled.   Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 12, 16 & 17.   For the reasons set forth below, it is recommended that Plaintiff's Motion for Judgment on the Pleadings be denied and Defendant's Motion be granted.

## I. RELEVANT BACKGROUND

### A. Background

Plaintiff was born in 1972.  Dkt. No. 9, Admin. Tr. ("Tr."), p. 73.  Plaintiff reported completing a GED.  *Id.*  He has past work experience as a custom frame assembler, hydraulic mechanic, janitor/maintenance worker, wood lathe operator, material handler, and receiving clerk.  Tr. at pp. 52-53.  Plaintiff alleges disability based upon severe back pain, leg pain, sleep apnea, lower disc problems, and inability "to walk, sit, and stand for too long."  Tr. at p. 269.  Plaintiff applied for disability and disability insurance benefits in December 2020.  Tr. at pp. 245-51.  He alleged a disability onset date of June 17, 2020.  *Id.*  Plaintiff's application was initially denied on June 7, 2021.  Tr. at pp. 138-51.  Upon reconsideration, Plaintiff's application was again denied on November 15, 2021.  Tr. at pp. 153-64.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at pp. 165-66.  Plaintiff appeared at a hearing before ALJ Brian LeCours on March 14, 2022.  Tr. at pp. 65-102.  On April 22, 2022, the ALJ issued a written decision, finding Plaintiff was not disabled under the Social Security Act.  Tr. at pp. 39-59.  On July 3, 2023, the Appeals Council denied Plaintiff's

request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

## B. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2025, and that he had not engaged in substantial gainful activity during the period between his alleged onset date and his date last insured. Tr. at p. 44. Second, the ALJ found that Plaintiff had the following severe impairment: degenerative disc disease of the lumbar spine. Tr. at pp. 44-46. Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at pp. 46-47. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> The claimant can balance without limitation and occasionally stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes or scaffolds. He can occasionally operate pedal controls bilaterally. The claimant can tolerate no more than occasional exposure to pulmonary irritants such as strong fumes, odors, dusts, and gases.

Tr. at p. 47. Fifth, the ALJ found that Plaintiff could not perform his past relevant work. Tr. at pp. 52-53. Sixth, the ALJ found that, based upon Plaintiff's "age, education, work experience, and residual functional capacity," there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically light work as a

sealing machine operator, inspector/packer, and small parts assembler, and, if hypothetically limited to sedentary work, then as a table worker, scale operator, and prep worker/preparer/cleaner.  Tr. at pp. 53-54.  The ALJ, therefore, concluded that Plaintiff is not disabled.  Tr. at pp. 53-55.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than

one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Whether the Appeals Council erred by not considering or discussing the new and relevant evidence presented to it

Plaintiff submitted a medical source statement from Kelly Meyer, RPA-C, of Champlain Spine and Pain Management, dated September 22, 2021, through February 13, 2023; a progress note dated September 14, 2022; a progress note dated September 8, 2022; and a radiology report dated September 7, 2022, to the Appeals Council.  Tr. at

6

pp. 2, 18-24, 27-33, 34-35, 60-64.   The Appeals Council declined to review the foregoing evidence.  Tr. at pp. 1-4.

"Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).  "[I]f the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision."  *Id.* (citing 20 C.F.R. §§ 404.981, 416.1481).

The Court's role in evaluating whether the Appeals Council erred in declining to review additional evidence is well-articulated in *Samantha S. v. Comm'r of Soc. Sec.*:

> However, the Second Circuit has clearly stated that when new evidence is submitted to the AC and the AC denies review, the reviewing court's role is to review the entire administrative record, including the new evidence, and determine whether substantial evidence supported the Commissioner's final decision.

> Under those circumstances, the question becomes whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require the AC to take the case.

*Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 189 (N.D.N.Y. 2019) (internal quotations and citations omitted).

The Appeals Council declined to review the medical source statement dated September 22, 2021, through February 13, 2023, because it failed to "show a reasonable probability that it would change the outcome of the decision."  Tr. at p. 2.  In other words, the Appeals Council did not find that this statement was material.  *See Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (explaining that for evidence to be material, there must

also be "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently").  In addition, material evidence is "both relevant to the claimant's condition during the time period for which benefits were denied and probative."  *Id.* at 597 (citing *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975)).

Here, the medical source statement from Kelly Meyer does not show a reasonable probability that the ALJ would have decided Plaintiff's application differently.  *Id.*; *see Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d at 189.  Although Plaintiff had been treated at Champlain Spine and Pain Management prior to Kelly Meyer's medical source statement, Ms. Meyer herself did not seem to treat Plaintiff during his previous visits.  Tr. at pp. 636-51.  Rather, the record indicates that PA Daniel Sanchez and Dr. Thierry Bonnabesse were Plaintiff's providers while he was a patient at Champlain Spine and Pain Management from September 22, 2021, to January 10, 2022.  *Id.*  Mr. Sanchez and Dr. Bonnabesse provided Plaintiff with a wide range of medical treatment, from diagnostic medial branch blocks to recommending a radiofrequency ablation to further alleviate Plaintiff's pain.  *Id.*  In contrast, Kelly Meyer's medical source statement only mentions Plaintiff's consult appointment on September 22, 2021, when he began treatment with Champlain Spine and Pain Management; yet, the form is signed and dated on February 13, 2023, well after Plaintiff received extensive treatment and additional appointments from this office. Tr. at pp. 60-64.  Ms. Meyer's statement does not reflect the extent of treatment that Plaintiff was provided at Champlain Spine and

Pain Management, nor does it suggest that Plaintiff had received additional care beyond January 10, 2022, and thus is inconsistent with the rest of the record concerning Plaintiff's treatment history with this office.  Tr. at pp. 60-64, 636-51.  Comparing Ms. Meyer's medical source statement to the disability determination explanations provided by Disability Determination Services expert consultants, Dr. M. Vazquez Gonzalez and Dr. R. Reynolds, there further lacks a reasonable probability that Ms. Meyer's statement would alter the ALJ's decision because Ms. Meyer, like Dr. Gonzalez and Dr. Reynolds, seems to lack a treatment relationship with Plaintiff.  Tr. at pp. 60-64, 104-16, 118-32; *see Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d at 189 (finding that a post-ALJ decision evaluation by a provider who "had no prior treatment relationship with plaintiff" made it "hard to see how his opinions might permissibly relate to the prior, discrete period of time for which plaintiff was denied benefits by the ALJ").  Therefore, it does not show a reasonable probability that it would alter the ALJ's decision.  *See Tirado v. Bowen*, 842 F.2d at 597; *see also Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d at 189.

Regarding the progress note dated September 14, 2022, the progress note dated September 8, 2022, and the radiology report dated September 7, 2022, the Appeals Council stated that Plaintiff's case was decided through April 22, 2022, and that "[t]his additional evidence does not relate to the period at issue."  Tr. at p. 2.  "[E]vidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in

time, need not be considered by the Appeals Council." *David C. v. Comm'r of Soc. Sec.*, 659 F. Supp. 3d 354, 362 (W.D.N.Y. 2023) (citing *Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999)).

In the progress note dated September 14, 2022, Plaintiff reported increased pain, was unable to perform physical therapy exercises, and was noted to have diastasis recti, which was not mentioned before in Plaintiff's medical records. Tr. at pp. 18-24. However, Plaintiff was previously unsuccessful with physical therapy in May 2021, as he did not fully complete the recommended exercises and discontinued treatment. Tr. at pp. 622-29. The progress note dated September 8, 2022, also noted diastasis recti, and Plaintiff was further recommended to participate in physical therapy. Tr. at pp. 27-33. Despite concerns regarding "claimant's overall tolerance to generalized activity," Mr. Sanchez found Plaintiff's rehabilitation potential to be fair. *Id.* Finally, the radiology report from September 7, 2022, noted a height loss at L5-S1, along with previously noted affects at L4-L5 and L5-S1, again with no significant stenosis. Tr. at pp. 34-35, 129, 381, 387-88, 432, 457, 570, 605-06. Plaintiff seemed to develop diastasis recti and a new height loss at L5-S1 since the ALJ's decision, but because these conditions do not relate back to his functioning during the relevant period, the Appeals Council did not err by declining to consider this additional evidence. Tr. at pp. 2, 18-24, 27-33, 34-35; *see Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) ("The SSA thus need not consider evidence related to plaintiff's condition after the date of the ALJ's decision . . . ."); *Brown v. Barnhart*, 2003 WL 1888727, at *11 (S.D.N.Y. Apr. 15,

2003) ("To satisfy the materiality standard, additional evidence 'must also relate back to the time period for which benefits were denied, that is, before the ALJ's decision' . . . ." (quoting *Wiggins v. Barnhart*, 2002 WL 1941467, at *8 (S.D.N.Y. Aug. 21, 2002)); *Collins v. Comm'r of Soc. Sec.*, 960 F. Supp. 2d 487, 501 (S.D.N.Y. 2013) ("Rather than shedding light on Collins's condition during the relevant time period, the new evidence suggests at most that his condition worsened after the ALJ's decision.").

Therefore, the Appeals Council did not err by not considering the additional evidence presented to it.  It was neither material nor new, and the Appeals Council was not required to explain why review was denied.  *See Bruce Wayne C. v. Comm'r of Soc. Sec.*, 2022 WL 1304024, at *7 (N.D.N.Y. May 2, 2022) ("Considering the regulatory distinction between a denial and decision and the vast majority of Circuit Courts which acknowledge and follow that regulatory distinction . . . the Appeals Council was not required to explain its reasoning for denying review of the ALJ's decision in this instance.").

## B. Whether the ALJ erred by not considering Plaintiff's depression, anxiety, level 2 obesity, and COPD at Step 2 and Step 4

Plaintiff argues that his anxiety and depression are severe impairments because he was being treated with strong medications, had medications added to his treatment regimen, and testified at the hearing that he was limited by his mental impairments.  Pl.'s Mem. of Law at p. 20.  Plaintiff cites in his Reply Brief instances where he claims he was limited by his mental impairments.  Pl.'s Reply Brief at pp. 2-5.  Plaintiff further

11

argues that the ALJ erred at Step 4 by failing to include non-exertional limitations caused by anxiety, depression, and obesity in the RFC.  Pl.'s Mem. of Law at p. 22.

At Step 2, "the [Commissioner] . . . considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities." *Berry v. Schweiker*, 675 F.2d at 467.  A severe impairment is an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  "Step Two may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *see also Pulos v. Comm'r of Soc. Sec.*, 346 F. Supp. 3d 352, 358 (W.D.N.Y. 2018) (explaining that the *de minimis* standard "is meant only to screen out the weakest of claims").  However, "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

At Step 4, "[w]hen making a residual function capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Garcia v. Astrue*, 10 F. Supp. 3d 282, 298 (N.D.N.Y. 2012) (citing 20 C.F.R. § 404.1545(a)).  "The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources."

*Michelle B. v. Comm'r of Soc. Sec.*, 2021 WL 3022036, at *4 (N.D.N.Y. July 16, 2021) (quoting *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626, 640 (S.D.N.Y. 2019) (internal quotation marks omitted)).   "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Garcia v. Astrue*, 10 F. Supp. 3d at 298 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).

Here, the ALJ found that Plaintiff's anxiety and depression "symptoms were well-controlled with medications" and "cause[d] no more than 'mild limitation."   Tr. at p. 46 (citing Tr. at pp. 65-102, 298).   In his Report of Contact, Plaintiff stated that he is currently being treated with medication for his anxiety and depression, which was corroborated with his testimony during the hearing.   Tr. at pp. 82, 298.   While Plaintiff argues that he testified at the hearing that he was limited by his anxiety and depression, the only time Plaintiff mentioned these impairments at the hearing was when he stated that he took medication for his anxiety and depression, and did so without offering any indication that he was limited by his anxiety or depression.   Pl.'s Mem. of Law at p. 20; Tr. at p. 82.   Returning to the Report of Contact, Plaintiff stated that his anxiety and depression did not interfere with his functioning, and that it was only his back and legs that prevented him from working.   Tr. at p. 298.   He also declined a psychological evaluation.   *Id.*   Although Plaintiff cites many instances during which he received treatment for his anxiety and depression in his Reply Brief, these instances were regular treatment appointments, during which he had medication prescribed and adjusted as

needed.  Pl.'s Reply Brief at p. 4; Tr. at pp. 583, 589-90.  These instances alone do not meet the threshold for determining that a condition is severe.  *See Taylor v. Astrue*, 32 F. Supp. 3d at 266.  Plaintiff's testimony, treatment regimen, and the record provide substantial evidence with which to conclude that his anxiety and depression were not severe impairments, and remand is not warranted on this point.  Tr. at p. 46.

Turning to Plaintiff's argument that the ALJ erred by failing to include his mental limitations in determining his RFC, Plaintiff failed to show that he was in fact limited by his anxiety or depression.  Pl.'s Mem. of Law at p. 20; *see Berry v. Schweiker*, 675 F.2d at 467 ("[T]he claimant bears the burden of the proof as to the first four steps.").  As previously noted, Plaintiff himself stated that his anxiety and depression did not limit his functioning.  Tr. at p. 298.  The ALJ took Plaintiff's testimony into account, stating "while the claimant reported some feelings of depression due to his physical limitations, he stated that his mental symptoms were well-controlled with medications prescribed by his primary care physician ('PCP') and that the conditions do not bother him," and acknowledged that Plaintiff "indicated that he did not want these conditions evaluated and that it was only his back and leg pain that kept him from working."  Tr. at p. 46 (citing Tr. at pp. 65-102, 298).  Because the ALJ made Plaintiff's RFC determination "based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources," he did not err.  *Id.*; *Michelle B. v. Comm'r of Soc. Sec.*, 2021 WL 3022036, at *4.

Regarding Plaintiff's obesity, Plaintiff argues that the ALJ erred by not finding his obesity as a severe impairment, while Defendant argues that the ALJ reasonably found that the Plaintiff's obesity was not a severe impairment.  Pl.'s Mem. of Law at pp. 20-22; Def.'s Mem. of Law at p. 13.  "[O]besity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities."  SSR 02-1P, 2002 WL 34686281, at *4 (Sept. 12, 2002).  Here, the ALJ found that "although the claimant had a measured body mass index ('BMI') between 34.4 and 36.5, there is no indication that obesity or the claimant's body habitus more than minimally affects the claimant's physical or mental ability to perform basic work activities."  Tr. at p. 45.  The ALJ stated that "[t]he medical records do not contain any references to significant problems or exacerbations of any body system due to obesity, and the claimant has made no allegation in regard to significant effects of obesity on his ability to perform any activities, either personal or work-related."  *Id.* (citing Tr. at pp. 65-102, 371-75, 376-451, 469-90, 525-51, 556-615).  Although Plaintiff cites instances of being treated for and having obesity, Pl.'s Mem. of Law at pp. 21-22 (citing Tr. at pp. 82, 86), "the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'"  *Taylor v. Astrue*, 32 F. Supp. 3d at 266 (quoting *Coleman v. Shalala*, 895 F. Supp. at 53).  Because the ALJ supported his finding with substantial evidence, including medical records and Plaintiff's own testimony, to determine that

Plaintiff's obesity was not a severe impairment, he did not err.  Tr. at p. 45 (citing Tr. at pp. 65-102, 371-75, 376-451, 469-90, 525-51, 556-615).

Even if the ALJ did err, he accounted for possible limitations caused by Plaintiff's obesity when determining his RFC: "To address the claimant's chronic back and knee pain, as well as any comorbid symptoms from obesity or plantar fasciitis, he is limited to only occasional postural activities and operation of bilateral pedal controls."  Tr. at p. 50.  Because the ALJ considered Plaintiff's obesity when determining his RFC, any mischaracterization of Plaintiff's obesity as a non-severe impairment is not grounds for reversal.  *Id.*; *see Acevedo v. Saul*, 577 F. Supp. 3d 237, 247 (S.D.N.Y. 2021) (citing *Williams v. Colvin*, 98 F. Supp. 3d 614, 629-30 (W.D.N.Y. 2015)) ("So long as a non-severe impairment is considered in assessing a claimant's RFC at steps three and four, any improper labeling of an impairment or combination of impairments as non-severe is not reversible error.").

Regarding Plaintiff's COPD/emphysema, Plaintiff argues that the ALJ erred by not considering this condition to be a severe impairment, and failed to explain how an obese person with spinal impairments and respiratory limitations could work on a full-time basis.  Pl.'s Mem. of Law at p. 22.  The ALJ found "little evidence of treatment" for Plaintiff's emphysema/COPD and thus this condition "d[id] not meet the durational requirements to be considered a severe impairment."  Tr. at p. 45.  The ALJ supported this finding with substantial evidence, stating that Plaintiff's CPAP use and "[m]edication and the use of an inhaler were also noted to be effective for symptoms."

16

*Id.* (citing Tr. at pp. 544, 589, 593, 638, 641, 645). In determining the RFC, the ALJ found that "due to the claimant's reported history of emphysema, he must have no more than occasional exposure to pulmonary or respiratory irritants." Tr. at p. 50. Similar to Plaintiff's obesity, even if the ALJ erred in determining that Plaintiff's COPD/emphysema were non-severe impairments, the ALJ considered these conditions in the RFC analysis, making any mischaracterization of plaintiff's COPD/emphysema moot. *See Acevedo v. Saul*, 577 F. Supp. 3d at 247. Thus, reversal is not warranted.

### C. Whether the ALJ erred by discounting Plaintiff's subjective complaints

Plaintiff argues that his subjective testimony concerning his pain is supported by objective evidence, citing to appointments on October 29, 2020, September 7, 2022, September 21, 2021, September 8, 2022, that indicated a positive slump test, positive straight leg raise, and positive bilateral facet grind test, along with disc bulge and disc desiccation. Pl.'s Mem. of Law at pp. 23-24. He argues that the ALJ replaced these findings with his own medical opinion lacking any evidentiary basis. Pl.'s Mem. of Law at p. 25. Plaintiff further argues that the ALJ discounted his testimony because he was receiving unemployment benefits, had only conservative treatment, and did not comply with his treatment. Pl.'s Mem. of Law at p. 25. He claims that his good work record should have enhanced his credibility as well. Pl.'s Mem. of Law at pp. 32-33.

"[A] reviewing court must uphold the ALJ's decision to discount a plaintiff's subjective complaints if substantial evidence supports that determination." *Fiedler v. Colvin*, 54 F. Supp. 3d 205, 217 (E.D.N.Y. 2014) (citing *Rodriguez v. Barnhart*, 2006

WL 988201, *5 (S.D.N.Y. Apr. 13, 2006)).  "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*."  *Martes v. Comm'r of Soc. Sec.*, 344 F. Supp. 3d 750, 756-57 (S.D.N.Y. 2018) (alteration and emphasis in original) (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)) (internal quotation marks omitted). "[A]n ALJ 'is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.'"  *Id.* at 763 (quoting *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015)).

"We must have objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms."  SSR 16-3P, 2017 WL 5180304 at *3 (Oct. 25, 2017).  "We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons." 20 C.F.R. § 404.1529(c)(3).  Plaintiff argues that the objective evidence, such as a positive straight leg raise, a positive bilateral facet grind test, a positive slump test, and radiographic findings support his subjective complaints of pain. Pl.'s Mem. of Law at pp. 22-25.  However, this matter can only be remanded if the ALJ's decision is not supported by substantial evidence.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 151 (N.D.N.Y. 1999) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987))

("An ALJ who rejects subjective testimony concerning pain and other symptoms 'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence.'").

Here, the ALJ supported his findings with substantial evidence. To justify his conclusion that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," the ALJ found that, while "[t]he medical evidence, including signs, symptoms, and diagnostic laboratory findings, substantiate the claimant's diagnoses of chronic lower back pain, intervertebral disc disorders of the lumbar region, and lumbar spondylosis without myelopathy or radiculopathy," it "does not establish that the claimant's symptoms would prevent or significantly impede the claimant's functional ability to perform all work-like activities on a regular and continuing basis." Tr. at p. 48 (citing Tr. at pp. 376-451, 452-62, 469-90, 556-615, 636-51). The ALJ found that the radiographs were "rather benign and unexceptional," and "showed well-preserved disc space heights, normal anatomic alignment and lumbosacral junction, and no evidence of spondylolysis, facet joint osteoarthritis, bone destruction, fracture, or intrinsic bony abnormality." *Id.* (citing Tr. at 484-85, 594, 607). The ALJ found that MRIs from the spine "revealed some mild to moderate disc desiccation and mild bilateral facet joint hypertrophy at the L4-5 and L5-S1 levels but no significant central canal stenosis or neuroforaminal narrowing at any level," and in

"[m]ore recent images of the spine . . . a very slight dextrocurvature of the lumbar spine, normal vertebral body and disc heights, and no obvious deformity, dynamic instability, or spondylolisthesis."  Tr. at pp. 48-49 (citing Tr. at pp. 381, 385-97, 457, 486-87, 537, 538, 548-49, 570, 571, 605-06).   The ALJ also found persuasive the opinions of Dr. M. Vazquez Gonzalez and Dr. R. Reynolds, who found that Plaintiff was capable of performing light work, and that the opinions of these two doctors were "supported by thorough narrative disability determination evaluations and are consistent with the overall objective and physical examination findings" and "consistent with the routine and conservative level of symptomatic treatment received."  Tr. at pp. 51-52 (citing Tr. at pp. 371-462, 469-90, 501-18, 525-51, 556-615, 616-29, 636-51).

The ALJ also justified his finding with "sufficient specificity" and "legitimate reasons."  *See Martone v. Apfel*, 70 F. Supp. 2d at 151 (quoting *Brandon v. Bowen*, 666 F. Supp. at 608) (internal quotation marks omitted).  "The ALJ may 'discount plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and [claimant's] own activities during the relevant period.'"  *Lovell v. Colvin*, 137 F. Supp. 3d 347, 354 (W.D.N.Y. 2015) (alteration in original) (quoting *Wischoff v. Astrue*, 2010 WL 1543849, at *7 (W.D.N.Y. Apr. 16, 2010)).  The ALJ found that "[t]here is no evidence of ongoing or regular treatment with an orthopedist or neurologist, spinal surgery, or specialized pain management," and reasonably concluded that "the claimant's conservative treatment regimen was relatively effective in controlling his symptomology."  Tr. at p. 50.  In addition, the ALJ considered Plaintiff's

explanation for non-compliance with physical therapy, acknowledging Plaintiff's "need[] to save his energy and tolerance to complete outside duties that had to get done . . . after which he is too sore with increased knee, hip, and back pain." *Id.* (citing Tr. at pp. 502-10, 622-24, 627-29). However, the ALJ reasonably found that "[f]ailure to seek or maintain regular medical treatment suggests the claimant's symptoms and limitations may not be as severe as alleged," and concluded that "[t]he claimant's history of conservative treatment, along with findings on both physical and mental status examinations are not consistent with his allegations regarding the severity and limiting effects of his symptoms." *Id.* Finally, the ALJ evaluated Plaintiff's activities during the relevant period, and found that although Plaintiff had "a slight decrease in range of motion with pain in the lumbar spine," Plaintiff could "possess[] a normal gait and station," "ambulate independently without the use of assist[ance]," "heel to toe and tandem walk," and "rise from a seated position . . . without difficulty." Tr. at p. 49 (citing Tr. at 371-75, 379-81, 455-57, 470-83, 502-10, 535-38, 560, 564-71, 579-611, 622-24, 627-29, 638-46). To the extent Plaintiff also argues that the ALJ erred by not enhancing his credibility due to his good work history, Pl.'s Mem. of Law at p. 33, "[a]lthough a plaintiff with a long work history is entitled to 'substantial credibility', the Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period." *Harvey v. Astrue*, 2008 WL 4517809, at *13 (N.D.N.Y. Sept. 29, 2008)

(quoting *Howe-Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. June 27, 2007)). Because the ALJ did not err, remand is not warranted.

Finally, Plaintiff argues that that the ALJ erred by denying benefits because Plaintiff had been receiving unemployment.  Pl.'s Mem. of Law at pp. 25-28; Pl.'s Reply Brief at pp. 5-7.  Plaintiff, relying on an SSA Memorandum from August 9, 2010, notes that "[r]eceipt of unemployment benefits does not preclude the receipt of Social Security disability benefits," and "is only one of the many factors that must be considered in determining whether the claimant is disabled."  Pl.'s Mem. of Law, Addendum A; *see Plouffe v. Astrue*, 2011 WL 6010250, at *22 (D. Conn. Aug. 4, 2011).  In his decision, the ALJ states that "[i]t is noteworthy that the claimant received unemployment insurance benefits from the 3rd quarter of 2020 through the 3rd quarter of 2021, indicating that the claimant affirmed he was ready, willing, and able to work during the period." Tr. at p. 44.  However, the ALJ makes no further mention of the fact that Plaintiff had received unemployment benefits.  *Id.*  Unlike the ALJ in *Plouffe v. Astrue*, the ALJ did not conclude that Plaintiff was disabled based on this factor and continued the analysis. Tr. at 44-55; *Plouffe v. Astrue*, 2011 WL 6010250, at *22.  The Court agrees with Defendant that this fact does not seem to be a defining factor, or even "one of . . . many factors," in finding that the Plaintiff was not disabled.  *Id.*; Pl.'s Mem. of Law, Addendum A; Def.'s Mem. of Law at pp. 17-18.  Thus, remand is not warranted.

## IV. CONCLUSION

**ACCORDINGLY**, it is

22

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: August 14, 2024
         Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge